William D. Gold *v.* John A. Fite.

WILLIAM D. GOLD *v.* JOHN A. FITE.

1. ELECTION. *Contest. Effect of. Pending.* A contest of election, by adverse claimant of the office of Chancellor, does not operate to vacate the office pending the contest, nor to confer upon the Governor the power to appoint a Chancellor *pro tempore.*

2. GOVERNOR. *Power of appointment. Appointment. When good.* Where a vacancy occurs by the death of the Chancellor, the Governor has the power to fill the vacancy by appointment, until the next biennial election, which shall be held more than 30 days after the vacancy. And where the facts exist which authorize the appointment it will be good, though the Governor in making it, acts upon the erroneous assumption that he is fill-

ing a vacancy caused by the resignation of a Chancellor who was only such *de facto.*

Constitution, Art. 7, Sec. 4; Art. 11, Sec. 1, and Sections 312, 313, 314 and 315.

3. OFFICE OF CHANCELLOR. *Right to. Whence derived.* The right to the office of Chancellor is perfected by the election, and the fact that he died without being commissioned, did not render him the less a Chancellor while he lived, and his death created a vacancy in the office which may be filled *pro tempore* by the Governor.

4. CHANCELLOR BY GOVERNOR'S APPOINTMENT. *Powers of.* A Chancellor appointed by the Governor in pursuance of the law is clothed, while he continues in office, with all the powers of a Chancellor elected by the people; and his appointment of Clerk and Master for the constitutional term of that office is valid.

5. CLERK AND MASTER. *Office of. Vacant when. Under the schedule.* The accidental fact that no Chancery Court was held at Carthage after the adoption of the Constitution of 1870, until August, 1871, did not have the effect under the second paragraph of the first section of the schedule of the Constitution, to continue in office a Clerk and Master who had been appointed on the 14th day of February, 1865. But on the contrary, the office was then vacant, and subject to be filled by the Chancellor of the District at that time.

6. RULES AND PRINCIPLES FOR CONSTRUING CONSTITUTIONS AND LAWS. Schedule to Constitution; nature of defence; Jamison on Constitutional Convention, 95; The State *v.* The Clarksville & R. T. P. Co.; 2 Sneed, 88; Ledg. on Stat. and Const. Law, 234.

7. DECREES. *Plea of coram non judice.* Where parties fail to interpose the plea of *coram non judice* the decrees of a Chancellor *de facto* will be binding upon them.

---

FROM SMITH.

---

Appeal from the Chancery Court. WILLIAM G. CROWLEY, Judge.

R. CANTRELL and A. A. SWOPE for Gold.

JAMES W. McHENRY and JOHN W. HEAD for Fite.

BURTON, Special J., delivered the opinion of the Court.

This is a contest for the office of Clerk and Master in Chancery, for the County of Smith, John A. Fite claiming the office by appointment made on the —— day of August, 1871, by Chancellor Goodpasture, and William D. Gold claiming under appointment of the present Chancellor, Crowley, made at the October Term, 1872, of the Chancery Court at Carthage.

At the term of the Chancery Court last mentioned, Gold was appointed and inducted into office. Fite, claiming and holding the office under his former appointment, excepted to the proceedings. A Bill of Exceptions is signed by Chancellor Crowley, and in this way the parties have seen proper to assert their relative claims to the office in suit.

The facts necessary to a decision of the case will be best shown by stating them in connection with the several propositions of law argued in the case, and to which they refer.

1. The first position assumed by the counsel of Gold is, that when Fite was appointed, in August, 1871, there was no vacancy in the office, but that the same was then filled by one David H. Campbell, who was not removed, and whose term of office had not expired. Campbell was first appoined to office on the 14th day of February, 1865, by the then Chancellor, Shackleford. He held the office until the 20th day of February, 1871. On that day the appellant, John A. Fite, was appointed Clerk and Mas-

ter by Chancellor Goodpasture. It should be noted here, though somewhat out of its order, that Fite was twice appointed; once, as above stated, on the 20th of February, 1871. Under this appointment he held the office until the 21st of August following, when he resigned, and was immediately re-appointed by Chancellor Goodpasture.

2. The argument that Campbell was the regular incumbent of• the office at the time both of the first and last appointment of Fite, is predicated upon the construction given by counsel to the second paragraph of the first Section of the Schedule of the Constitution of 1870, which is in the following words:

"Officers appointed by the Courts shall be filled by appointment, to be made and to take effect during the first term of the Court held by judges elected under this Constitution."

It is said that the October Term, 1872, was the first term of the Chancery Court for Smith County held by a Judge "elected" under the New Constitution, and that although the constitutional term of Campbell of six years had expired, it was extended by the Schedule until the term of Court held as aforesaid, at which time the appointment of his successor was to take effect.

There is no doubt that, by the constitutional provision above referred to, it was contemplated that the appointment of Clerks and Masters in Chancery throughout the State should be made and take effect at the time really indicated in the Schedule. The term of

William D. Gold *v.* John A. Fite.

office of the then incumbents was, as it lawfully might be, subjected to a kind of procrustean process, by which it was lopped off, or extended, to meet the constitutional requirement.

A proper construction of the Schedule determines whether Campbell's term of office expired, but the case involves the more serious inquiry, as to whether Goodpasture's appointment as Chancellor was warranted by law, and did it confer upon him the power of appointing at the time he exercised it? And before giving our views of this question, we proceed to state such facts in regard to it as will render intelligible our solution of this question.

The Fifth Chancery Division, composed in part of the County of Smith, was created by the Legislature in 1870, and at the first general election for Judicial officers, held under the amended Constitution of 1870, and in August of that year, W. W. Ward was elected Chancellor of that Division. It does not appear from the record whether he was ever commissioned or not; but it does appear, inferentially, that he never held a Court at Carthage. He sickened in November or December, 1870, and after a protracted illness, he died on the 10th day of April, 1871. Soon after Ward's election, one Robert A. Cox contested his election on the sole ground that Ward was disqualified to hold the office, by the 14th Amendment of the Federal Constitution. It is not intimated that there was any irregularity in conducting

16—vol. 2.

the election, or denied that he (Ward) was elected by a large majority.

Soon after the contest arose, W. W. Goodpasture was commissioned to fill the office of Chancellor, pending the contest. Goodpasture soon resigned the office, but was again appointed and commissioned by Governor Senter, on the 25th day of July, 1871. The second commission recites that the appointment was made to fill a vacancy occasioned by the resignation of the said W. W. Goodpasture. But this second appointment, it will be seen, was made several months after the death of W. W. Ward, and was before the second appointment of the contestant, Fite, as Clerk and Master.

On the 24th day of June, 1872, Governor John C. Brown issued his proclamation, ordering an election to fill the vacancy occasioned by the death of Hon. W. W. Ward. At the biennial election of 1872, the Hon. W. G. Crowley was elected Chancellor, and at the first term of the Court, held at Carthage, in October, 1872, he appointed the contestant, Gold, Clerk and Master.

We deem it unnecessary to discuss the contest made by Cox further than to announce that we do not think that it created a vacancy in the office of Chancellor; and, therefore, there was no Constitutional warrant for the appointment of Goodpasture, pending the contest. But to prevent an inference, suggested by argument of counsel in the case, we announce

distinctly that we do not admit that any decree pronounced by Chancellor Goodpasture, while holding under this appointment, was invalid. He was Chancellor *de facto*, and if parties chose to bring their causes to a hearing before him, without interposing the plea of *coram non judice*, then the decrees he rendered were binding upon them. Nor do we think that the validity of Goodpasture's first appointment rests upon the Constitutional and Legislative provision for the appointment of special Judges to hold Courts when the regular Judge shall fail to attend, or be unable to sit.

What provision of law was in force then, in July, 1871, authorizing the filling of vacancies in the office of Chancellor? In solving this question, one consideration of a general nature should be kept steadily in mind. The Constitution of 1870 was not a new Constitution, but in all its main features was a re-enactment of the Constitution of 1834. The same articles and sections are common to both instruments, with the exception of a few, though very important, amendments. Two of these sections have an important bearing on the question under discussion. Article 7, Section 4, of the Constitution of 1834, is in these words:

"The election of all officers, and the filling of all vacancies, that may happen by death, resignation or removal, not otherwise directed or provided for by this Constitution, shall be made in such manner as the Legislature shall direct."

The corresponding Section in the Constitution of 1870 is identical, except that the phrase, "that may happen by death, resignation or removal," is omitted.

Section 1, Article 11, of the Constitution of 1834, is, "all laws and ordinances now in force and use in this State, not inconsistent with this Constitution, shall continue in force and use until they shall expire, or be altered or repealed by this Legislature."

The corresponding Section of the Constitution of 1870 is in the same words, with the addition, however, of a clause irrelevant to this discussion.

By an Act of 1853, ch. 32, Sections 6 and 7, the Legislature directed how these vacancies should be filled. The substance of this Act is brought forward in Sections 312, 313, 314 and 315 of the Code. The three first Sections provide that the Governor shall order an election, prescribe the notice to be given, and the manner of giving it. Section 315 is in these words: "In the meantime the Governor shall appoint a suitable person to fill the office until the election of a successor."

Was this law in force and use on the 25th day of July, 1871, when Goodpasture was appointed the second time? Clearly it was, unless it was inconsistent with the Constitution of 1870. For it had not expired, or been altered by the Legislature.

It is argued, however, that Section 315 of the Code is repealed by the paragraph of Section 5, Art. 7, already quoted, which provides, in substance, that no special election shall be held to fill a vacancy in

William D. Gold v. John A. Fite.

the office of Judge, except at the next biennial election of civil officers, occurring more than thirty days after the vacancy.   These paragraphs are clearly prohibitory in their nature, and being paramount to any legislative enactment, did repeal so much of Section 315 as authorized the Governor to order a special election for Judge at a time other than the biennial election of civil officers.

But these clauses do not conflict with the legislative provision that vacancies shall be filled by appointment of the Governor, for the time intervening between the vacancy and the election held to fill it. The utmost that it does is to alter the time at which the Governor shall cause the election to be held, nor is it easy to see how this restriction as to the time of holding the election can be construed into a repeal of a power of the Executive to fill vacancies by appointment.

The Constitutional and Legislative provisions can stand together, the former modifying the latter only in prescribing a definite time for holding an election under its provisions.

If, then, the appointing power remained to the Governor, did the facts exist authorizing him to exercise it at the date of Goodpasture's second appointment?   In other words, did a vacancy at that time exist?   We have seen that Ward was elected Chancellor.   His right to the office was perfected by his election, and the fact, if it be so, that he did not receive his commission, owing to his accidental

sickness, or it may be to the contest about the office, did not render him any less the Chancellor of the Division for the Constitutional term; and consequently the death of Ward did create a vacancy, which the Governor was authorized to fill by appointment. The Governor, however, did not expressly make the appointment to fill the vacancy occasioned by Ward's death, but, as before remarked, to fill the vacancy occasioned by the resignation of Goodpasture. Here is a case where the facts existed authorizing the appointment, but the Governor did not rest the appointment upon the proper ground, but upon a different one; for we hold that the death of Ward, and not the resignation of the first invalid appointment of Goodpasture, occasioned the vacancy.

The learned counsel who opened the case remarked that he had been unable to find precedents precisely in point to sustain his argument. And we fully admit that the case, in several aspects, is one of the first impression with us. But in the absence of controlling authority, we can not declare void an act of the Governor, which it was his right and duty to do, merely because we are of opinion that in his commission he predicates his action upon a wrong state of facts.

If, then, W. W. Goodpasture was properly the appointed Chancellor, it can not be seriously argued that he did not possess the power of appointing a Clerk and Master. Judicial officers have held the office by appointment ever since the government was

established, and so far as we know, it has never been maintained that they were not invested with all the powers and privileges of the office according to the tenor of their commissions.

The remaining question is, whether the occasion had arrived which authorized Chancellor Goodpasture to appoint a Clerk? or, in other words, had the time of office of David H. Campbell, Clerk and Master, expired? And this brings us again to consider the clause in the Schedule of the Constitution, already quoted in this opinion.

The Schedule is that part of a written Constitution in which are comprised provisions deemed necessary—1st, to ascertain the will of the people in respect to the adoption of the instrument, matured by a Convention, as the Constitution of the State; 2nd, to effect, without inconvenience or embarrassment, the transition from the old to the new order of things, and to save rights acquired under existing laws from lapsing by their repeal; 3d, to set up and put in operation the institutions and agencies described in the Constituion so far as not already in operation.

These provisions are mostly temporary in purpose and effect, and although they are some of them of a character more or less fundamental, they seem incongruous with the permanent provisions of the Constitution, properly so-called. Jamison on the Constitutional Convention, 95. These considerations tend to the conclusion that the Schedule had performed its

office when the general election had been held under its requirements in 1870.

It can not be questioned that it was the intention of the Convention that the appointment of Clerks should be made by the Judges elected in August, 1870. It will be remembered that the Convention fixed the time of this election within a few months after they had closed their labors. They knew, of course, that under the laws the first term of the Courts held by them respectively must occur at farthest within six months after their qualification. So that we gather the intention of the Convention to be that this provision in the Schedule, which is temporary in its very nature, would have performed its office before the time of the last appointment of the contestant, Fite. The main intent of the provision is to fix an early time at which the appointment made under it should take effect. As matter of history, we know that these appointments were made in the other Chancery Divisions after the August elections, and they were not made in the Fifth Chancery Division, by reason of an exceptional state of facts that were unforeseen, and wholly unprovided for in the Schedule.

Again, it must be remembered that the terms of office of the then incumbent were extended, not by the direct terms of the Schedule, but only inferrentially from the other fact that their successors were to be appointed after the election of Judges under

the Constitution.    And if Campbell's term was extended for two years longer, it is by the merest implication.

The view of this Schedule that would prolong the time of the appointment of the Clerk until a Court was held at Carthage by an elected Chancellor, is a purely literal interpretation, and is not in accordance with the spirit and intention of the Schedule, as gathered from its terms.    A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter. And a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers, and such construction ought to be put upon it as does not suffer it to be elevated. 2 Sneed, 88; see Ledg. on Stat. and Const. Law, 234.

The case cited (*State* v. *Clarksville Turnpike*, 2 Sneed, 88) furnishes an accurate statement and forcible illustration of the rule that the real intention of the makers must prevail over the literal sense of the terms.    The owner of a turnpike road was allowed by the words of the charter to "erect a toll-gate within two miles of Clarksville, and appoint a toll-gatherer thereat."    The Court, ignoring a strict adherence to the literal meaning of the words, "within two miles of Clarksville," but giving proper effect to the intention, as deduced from the subject matter, the reason and spirit of the provision, held that the

owner could not place the gate nearer to the town than the two-mile post.

There are some rules of construction peculiar to Constitutional provisions, but we see no reason why this authority is not applicable in interpreting the will of the Convention in this instance.

Without pursuing this reasoning further, we are content to say, that at the time the contestant, John A. Fite, was appointed the term of office of David H. Campbell had fully expired, and that Chancellor Goodpasture had the right to fill the office by appointment.

The result of this opinion is, that the action of his Honor, Chancellor Crowley, must be reversed, and the contestant, Fite, must be again inducted into the office of Clerk and Master at Carthage, to hold for the Constitutional term of six years, from the date of his last appointment. The contestant, William D. Gold, will pay the costs of the cause.